UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 76.252.239.158,<br><br>                  Defendant. | Case No.:  20cv2117 -TWR(LL)<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**<br><br>**[ECF No. 4]** |

Currently before the Court is Plaintiff's November 12, 2020 "*EX PARTE* APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE."  ECF No. 4.  Because the Defendant has not been identified, no opposition or reply briefs have been filed.  Having reviewed Plaintiff's motion and all supporting documents, the Court **GRANTS** the motion for the reasons set forth below.

I.    **BACKGROUND**

Plaintiff alleges that it "is the owner of original, award winning adult motion pictures featured on its subscription-based adult websites." ECF No. 4-1 at 8. On October 28, 2020, Plaintiff filed a complaint against John Doe subscriber assigned IP address 76.252.239.158 alleging copyright infringement. ECF No. 1 ("Compl."). Plaintiff alleges that Defendant

has illegally infringed by downloading and distributing twenty-eight of its copyrighted movies over the BitTorrent file distribution network for an extended period of time. Id. at ¶¶ 1, 4. Plaintiff describes the BitTorrent network as a "system designed to quickly distribute large files over the Internet." Id. at ¶ 18. Plaintiff further alleges that Defendant, who "attempted to hide this theft by infringing Plaintiff's content anonymously," can be identified by his or her Internet Service Provider ("ISP"), AT&T U-verse, through his or her IP address 76.252.239.158. Id. at ¶ 5.

On November 12, 2020, Plaintiff filed the instant motion. ECF No. 4. Plaintiff seeks an order from the Court allowing it to serve a subpoena to Defendant's ISP seeking Defendant's true name and address pursuant to Federal Rule of Civil Procedure 45 so that Plaintiff may serve Defendant and prosecute the claims in its complaint. ECF No. 4-1 at 8-9.

## II.  LEGAL STANDARD

### A.  The Cable Privacy Act

The Cable Privacy Act generally prohibits cable operators from disclosing personally identifiable information regarding subscribers without the prior written or electronic consent of the subscriber. 47 U.S.C. § 551(c)(1). However, a cable operator may disclose such information if the disclosure is made pursuant to a court order and the cable operator provides the subscriber with notice of the order. 47 U.S.C. § 551(c)(2)(B). A cable operator is defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system." 47 U.S.C. § 522(5).

### B.  Early Discovery

A party may not seek discovery from any source before the Rule 26(f) conference unless that party first obtains a stipulation or court order permitting early discovery. Fed. R. Civ. P. 26(d)(1). Courts in the Ninth Circuit apply the "good cause" standard in deciding whether to permit early discovery. Semitool, Inc. v. Tokyo Electron America,

Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) (adopting the conventional standard of "good cause" in evaluating a request for expedited discovery). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Id. Good cause for expedited discovery has been found in cases involving claims of infringement and unfair competition. Id. In infringement cases, expedited discovery is frequently limited to allowing plaintiffs to identify Doe defendants. See Cell Firm Holdings, LLC v. Doe-72.220.126.76, No. 16CV2234-BEN (BLM), 2016 WL 4793161, at *3 (S.D. Cal. Sept. 14, 2016) (granting motion for expedited discovery in infringement case to obtain only the true name and address of the Doe defendant); Quad Int'l, Inc. v. Does 1-6, No. 2:12-CV-2631 LKK KJN, 2013 WL 142865, at *4 (E.D. Cal. Jan. 11, 2013) (granting motion for expedited discovery in infringement case to obtain Doe defendant's name and contact information); UMG Recordings, Inc. v. Doe, No. C-08-03999 RMW, 2008 WL 4104207, at *3 (N.D. Cal. Sept. 4, 2008) (granting leave to take expedited discovery in infringement case for documents that would reveal the identity and contact information for each Doe defendant).

District courts in the Ninth Circuit apply a three-factor test for determining whether good cause exists to allow for expedited discovery to identify certain defendants. Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999). First, the plaintiff should "identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court." Id. at 578. Second, the plaintiff must describe "all previous steps taken to locate the elusive defendant" to ensure that plaintiff has made a good faith effort to identify the defendant. Id. at 579. Third, plaintiff should establish that its lawsuit could withstand a motion to dismiss. Id.

## III. DISCUSSION

### A. Identification of Missing Party with Sufficient Specificity

For the Court to grant Plaintiff's motion, Plaintiff must first identify the Doe defendant with sufficient specificity to enable the Court to determine that the Doe

defendant is a real person subject to the Court's jurisdiction. Id. at 578. "Some district courts in the Ninth Circuit have determined that a plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP addresses to a physical point of origin." 808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash E37917C8EEB4585E6421358FF32F29CD63C23C91, No. 12CV00186 MMA (RBB), 2012 WL 12884688, at *4 (S.D. Cal. May 8, 2012); see e.g., OpenMind Sols., Inc. v. Does 1-39, No. C 11-3311 MEJ, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (finding plaintiff met its burden to identify the Doe defendants with sufficient specificity by identifying the unique IP addresses of individuals engaged in BitTorrent protocol and using geolocation technology to trace the IP addresses to a point of origin within the state of California); Pink Lotus Entm't, LLC v. Does 1-46, No. C-11-02263 HRL, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011) (same). Others have found that merely identifying the IP addresses assigned to the defendants on the day of the purported infringement is sufficient to satisfy the first factor." 808 Holdings, LLC, 2012 WL 12884688, at *4; see e.g., First Time Videos, LLC v. Does, No. C 11-01675 LB, 2011 WL 1431619, at *2 (N.D. Cal. Apr. 14, 2011) ("First, First Time Videos has identified the Doe defendants with sufficient specificity by submitting a chart listing each of the defendants by the IP address assigned to them on the day it alleges the particular defendant engaged in the infringing conduct."). This Court finds the first standard persuasive.

Here, Plaintiff has provided a declaration from David Williamson, an information and systems management consultant, currently employed as Plaintiff's Chief Technology Officer. ECF No. 4-2, Declaration of David Williamson ("Williamson Decl."), ¶¶ 11–12. Mr. Williamson states that he "oversaw the design, development, and overall creation of the infringement detection system called VXN Scan," which Plaintiff owns and uses to "identify the IP addresses used by individuals infringing Plaintiff's movies via the BitTorrent protocol." Id. ¶ 40. Mr. Williamson explains the VXN Scan system in detail, which involves, in part, a proprietary BitTorrent client that emulates the behavior of a

standard BitTorrent client by repeatedly downloading data pieces from peers within a BitTorrent network that are distributing Plaintiff's movies. Id. ¶¶ 52–55. Mr. Williamson states that other components of VXN Scan retrieve and store identical copies of every network packet that is sent and received by the proprietary BitTorrent client, which includes the IP address, date and time of the network transaction, the port number and BitTorrent client used to accomplish the network transaction. Id. ¶¶ 57–66. It also includes the "Info Hash" associated with the infringing computer file, which reflects the metadata of the underlying .torrent file being shared without authorization. Id. ¶ 62. Mr. Williamson further explains that VXN Scan also extracts infringing transaction data from each packet capture ("PCAP")[1], connects with Maxmind geolocation database to determine the ISP that assigned a particular IP address as well as the city and state the IP address traces to, and summarizes the extracted infringing transaction data in a tabular format. Id. ¶¶ 74–79.

Plaintiff also provides the declaration of Patrick Paige, a computer forensics expert retained by Plaintiff to analyze and retain forensic evidence captured by its VXN Scan system. ECF No. 4-2, Declaration of Patrick Paige ("Paige Decl."), ¶¶ 3–9, 12. Mr. Paige states that he reviewed a PCAP from Plaintiff containing information related to a transaction that occurred on September 10, 2020 involving IP address 76.252.239.158. Id. ¶ 16. Mr. Paige attests that in reviewing the PCAP, he was able to confirm that the PCAP is evidence of a recorded transaction with 76.252.239.158 on September 10, 2020 and it correlates to a movie owned by Plaintiff. Id. ¶¶ 18–19.

Next, Plaintiff provided a declaration from Emilie Kennedy, Plaintiff's in-house general counsel, in which Ms. Kennedy states that Plaintiff inputted IP address 76.252.239.158 into Maxmind's Geolocation Database prior to filing its complaint and prior to filing the instant motion, and both times, IP address 76.252.239.158 traced to a

---

[1] "A PCAP is a computer file containing captured or recorded data transmitted between network devices." Williamson Decl. ¶ 58.

location in San Diego, California.² ECF No. 4-2, Declaration of Emilie Kennedy ("Kennedy Decl."), ¶¶ 6–7.

Finally, Plaintiff provided a declaration from Susan B. Stalzer, an employee of Plaintiff who reviews the content of its motion pictures and who was tasked with reviewing contents of the infringing files identified in Exhibit A to the complaint and comparing them to Plaintiff's original works to confirm they were identical, strikingly similar or substantially similar. ECF No. 4-2, Declaration of Susan B. Stalzer, ("Stalzer Decl."), ¶¶ 3, 7–10. Ms. Stalzer also states that she used "American Registry for Internet Numbers ('ARIN') to confirm that the ISP AT&T U-verse did own Defendant's IP address at the time of the infringements, and hence has the relevant information to identify Doe Defendant." Id. ¶ 12. The dates of the alleged infringing activity in Exhibit A range from April 4, 2019 through September 10, 2020. ECF No 1-2.

Because Plaintiff has provided the Court with the unique IP address and the dates and times of connection plus the methodology for obtaining them, the name of the ISP and/or cable operator that provided internet access for the user of the identified IP address, and used Maxmind geolocation technology to trace the IP address to this District at or close to the time of the infringement and prior to filing the complaint and this motion, the Court finds that Plaintiff has made a sufficient showing that Doe Defendant with IP address 76.252.239.158 likely resolves to a real person or entity with a physical address in this District. See Criminal Prods., Inc. v. Doe-72.192.163.220, No. 16-CV-2589 WQH (JLB), 2016 WL 6822186, at *2–3 (S.D. Cal. Nov. 18, 2016); 808 Holdings, LLC, 2012 WL 12884688, at *4.

**B.     Previous Attempts to Locate Defendant**

---

² The Court notes that Mr. Williamson stated that the VXN Scan system connects with the Maxmind database automatically to add the ISP that assigned the IP address, as well as the city and state it traces to, to a tabular output of infringing transaction data. Williamson Decl. ¶¶ 74–79. The VXN Scan system thus appears to trace the IP address to a city and state at or close to the time of infringement.

Second, Plaintiff must describe all prior attempts it has made to identify the Doe defendant in a good faith effort to locate and serve them. See Columbia Ins. Co., 185 F.R.D. at 579. Plaintiff states that it "diligently attempted to correlate Defendant's IP address to Defendant by searching for Defendant's IP address" on various internet search tools; by reviewing sources of authority such as legislative reports and informational technology guides for other means of identification; and by consulting with computer investigators and cyber security experts. ECF No. 4-1 at 15. Plaintiff states that despite these efforts, it is unable to obtain the identity of the alleged infringer because although publicly available data enables Plaintiff to identify the ISP, city, and state associated with an IP address, it does not allow Plaintiff to obtain the name of the subscriber. Id.  Plaintiff further states that Defendant's IP address is "assigned to Defendant by his or her [ISP], which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity." Id. at 8; Paige Decl. ¶ 22. Based on the above, the Court finds that Plaintiff has made a good faith effort to identify and locate the Doe defendant.

## C. Whether Plaintiff Can Withstand a Motion to Dismiss

"[P]laintiff must make some showing that an act giving rise to civil liability actually occurred and that the [pre-service] discovery is aimed at revealing specific identifying features of the person or entity who committed that act." Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 573, 580 (N.D. Cal. 1999). "[A] plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (citations omitted). "To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." Id. (citation omitted).

Plaintiff states that it is the exclusive rights holder of the copyrighted works at issue and that they are registered with the United States Copyright Office. See ECF No. 4-1 at 17; Compl. at ¶¶ 1-3, 31-33; ECF No. 1-2 (Exhibit A); Williamson Decl. ¶ 13; Stalzer Decl.

¶¶ 7–10. Plaintiff alleges that between April 4, 2019 and September 10, 2020, Defendant infringed Plaintiff's copyrighted works by downloading, copying, and distributing Plaintiff's works using the BitTorrent file distribution network. See ECF No. 4-1 at 17; Compl. at ¶ 38; ECF No. 1-2. Plaintiff further alleges that it did not authorize, permit, or consent to Defendant's copying or distributing its works. ECF No. 4-1 at 17; Compl. at ¶¶ 35-37. Accordingly, Plaintiff has alleged the prima facie elements of direct copyright infringement and could withstand a motion to dismiss. See Ellison, 357 F.3d at 1076; Columbia Ins. Co., 185 F.R.D. at 579–80.

## IV.  CONCLUSION

Once Plaintiff learns the subscriber's identity, it cannot rely on a bare allegation that he or she is the registered subscriber of an IP address associated with infringing activity to state a plausible claim for direct or contributory copyright infringement. Cobbler Nevada, LLC v. Gonzales, 901 F.3d 1142, 1144 (9th Cir. 2018); Strike 3 Holdings, LLC v. Doe 70.95.181.51, No. 19-CV-73-WQH-WVG, 2019 WL 777416, at *3 (S.D. Cal. Feb. 21, 2019). However, at this point in the litigation, Plaintiff has made an adequate showing of the need to subpoena Defendant's ISP. See Glacier Films (USA), Inc. v. Turchin, 896 F.3d 1033, 1036 (9th Cir. 2018) (observing that the district court's case management order permitting "limited discovery from an Internet Service Provider to establish a potential infringer's identity" was part of a "practical solution" to manage a large number of peer-to-peer copyright infringement cases); Strike 3 Holdings, LLC v. Doe, No. 218CV02637MCECKD, 2019 WL 935390, at *4–5 (E.D. Cal. Feb. 26, 2019); Strike 3 Holdings, LLC v. Doe 70.95.181.51, 2019 WL 777416 at *3. Thus, finding good cause, the Court **GRANTS** Plaintiff's motion for expedited discovery and **ORDERS** the following:

1. Plaintiff may serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on AT&T U-verse that seeks only the true name and address of the subscriber assigned IP address 76.252.239.158 during the time period of the allegedly infringing conduct described in Plaintiff's complaint. Plaintiff shall not subpoena additional information.

2.       Plaintiff may only use the disclosed information for the purpose of protecting its rights in pursuing this litigation.

3.       Within fourteen calendar days after service of the subpoena, AT&T U-verse shall notify the subscriber that his or her identifying information has been subpoenaed by Plaintiff. The subscriber whose identity has been subpoenaed shall have thirty calendar days from the date of such notice to challenge the disclosure by filing an appropriate pleading with this Court contesting the subpoena.

4.       If AT&T U-verse wishes to move to quash the subpoena, it shall do so before the return date of the subpoena. The return date of the subpoena must allow for at least forty-five days from service to production. If a motion to quash or other customer challenge is brought, AT&T U-verse shall preserve the information sought by Plaintiff in the subpoena pending resolution of such motion or challenge.

5.       Plaintiff shall serve a copy of this Order with any subpoena obtained and served pursuant to this Order to AT&T U-verse. AT&T U-verse, in turn, must provide a copy of this Order along with the required notice to the subscriber whose identity is sought pursuant to this Order.

6.       Once Plaintiff learns the identity of the subscriber(s), Plaintiff shall provide a copy of this Order to that person or those persons when Plaintiff first makes contact with the subscriber regarding this case. At that same time, Plaintiff shall also provide the subscriber(s) a copy of the Ninth Circuit's opinion in Cobbler Nevada, LLC v. Gonzales, 901 F.3d 1142 (9th Cir. 2018). Once both have been provided to the subscriber(s), counsel for Plaintiff shall immediately file a declaration that confirms these have been provided to the subscriber.

7.       Plaintiff and AT&T U-verse shall henceforth refer to the subscriber as "John/Jane Doe" and shall redact and omit from all future filings all information that identifies the subscriber personally. Such identifying information includes the subscriber's name and address, unless and until the subscriber becomes a defendant in the above-captioned case. Plaintiff and AT&T U-verse shall refer to the subscriber generically in any

filings and attach—under seal—a separate exhibit that includes the subscriber's identifying information.[3]

8.  The subscriber may initially proceed anonymously as "John/Jane Doe" until such time that there is sufficient proof before the Court that the subscriber is connected with the alleged infringement.

9.  Plaintiff may not engage in any settlement discussions with the subscriber unless and until the subscriber has been served with the Complaint and the documents set forth in paragraph (6) above.

**IT IS SO ORDERED**.

Dated:  December 8, 2020

Honorable Linda Lopez
United States Magistrate Judge

---

[3] Before filing any document under seal, the parties shall follow and abide by applicable law, including Civil Local Rule 79.2, Section 2.j. of the Electronic Case Filing Administrative Policies and Procedures, and chambers rules.